**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Eugene Richard HOPPE, Defendant—**
**Appellant.**

**No. 02–50131.**
**D.C. No. CR–01–00939–WJR.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 2002.

Decided Sept. 18, 2002.

Before REINHARDT, LEAVY, and TROTT, Circuit Judges.

---

## MEMORANDUM *

While posing as a United States Postal Inspector, Eugene Hoppe ("Hoppe") conned Ms. Wagner and Mr. Thomas ("Victims") out of several thousand dollars by offering to sell property which he claimed had been seized by the United States Postal Service. Hoppe pleaded guilty to two counts of demanding or obtaining money while impersonating a federal officer, in violation of 18 U.S.C. § 912 (2001). At sentencing, Hoppe received a four-level enhancement under U.S.S.G. § 2B1.1(b)(7)(A) (2001) for misrepresenting that he acted "on behalf of a . . . government agency." He appeals the resulting sixteen-month prison sentence.

We have jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm Hoppe's sentence.

## I  Standard of Review

"We review for clear error a district court's findings of fact underlying a sentencing decision." *United States v. Novak,* 284 F.3d 986, 988 (9th Cir.2002). "The district court's application of the Sentencing Guidelines to the facts is reviewed for an abuse of discretion." *United States v. Gutierrez–Hernandez,* 94 F.3d 582, 584 (9th Cir.1996).

## II  Discussion

Hoppe admits that he "undoubtedly presented himself" as a Postal Inspector for the United States government and "undoubtedly told Ms. Wagner and Mr. Thomas that he had access to property seized by the government and could sell it cheaply to non-governmental employees." Using the alias "Gene Juarez," Hoppe told the Victims that "Eugene Hoppe" was his supervisor at the Postal Inspector's office. Moreover, when Wagner drew up a sales contract for the non-existent goods, Hoppe signed it "Gene Juarez for Eugene Hoppe."

These facts communicated the idea that Hoppe, as a supposed Postal Inspector employed by the United States government, could sell property seized by the Postal Service—but only to non-government employees—and was authorized to do so on behalf of his supposed government supervisor. A fair inference from this representation was that Hoppe could not have purchased it himself and that he was selling the property for his purported government employer. Given this record, the district court did not clearly err in finding that Hoppe's offense involved "a misrepresentation that the defendant was acting *on behalf of* . . . a governmental agency." U.S.S.G. § 2B1.1(b)(7)(A) (emphasis added).

Relying on recently added commentary to the Guidelines, Hoppe argues that the enhancement was wrongly applied to him because no evidence shows that he represented that he was selling property *for the benefit of* the Postal Service:

> Subsection (b)(7)(A) applies in any case in which the defendant represented [he] was acting *to obtain a benefit on behalf of* . . . a government agency (regardless of whether the defendant actually was associated with the . . . agency) when, in fact, the defendant intended to divert all or part of that benefit (e.g., for the defendant's personal gain).

U.S.S.G. § 2B1.1, cmt. n. 5(B) (emphasis added). Hoppe's argument fails because his misrepresentation that he was selling property on behalf of the Postal Service necessarily conveyed that he was doing so

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

for Postal Service's and, by extension, the government's benefit.

Having determined that Hoppe misrepresented that he was acting on behalf of the Postal Service, the district court was obligated to impose a four-level enhancement under U.S.S.G. § 2B1.1(b)(7)(A).[1] Consequently, the district court did not abuse its discretion by doing so.

**AFFIRMED.**

REINHARDT, Circuit Judge, dissenting.

I respectfully disagree that the district judge acted within his discretion in imposing the four-level sentencing enhancement for misrepresenting that he acted "on behalf of a ... government agency." U.S.S.G. § 2B1.1(b)(7)(A) (2001). The enhancement simply does not apply to Hoppe's conduct.

In 2001, the United States Sentencing Commission changed the commentary accompanying § 2B1.1(b)(7)(A) and made it clear that the sentencing enhancement for acting "on behalf of" a government agency applies only to crimes "in which the defendant represented that [he] was acting *to obtain a benefit* on behalf of ... a government agency." U.S.S.G. § 2B1.1, cmt. n. 5(B) (emphasis added). The phrase "to obtain a benefit" is a new addition to the commentary, and it narrows the class of defendants to whom the enhancement applies. *See United States v. Romero*, 293 F.3d 1120, 1126 (9th Cir.2002) (interpreting old commentary and stating: "[T]he plain meaning of 'on behalf of' is broader than 'to the benefit of'"). The commentary also contains a new, more specific, example: "A defendant, chief of a local fire

department, who conducted a public fundraiser representing that the purpose of the fundraiser was to procure sufficient funds for a new fire engine when, in fact, the defendant intended to divert some of the funds for the defendant's personal benefit." *Id.*

The Supreme Court has held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute." *United States v. Stinson*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). The additional language and the new example added to the commentary on § 2B1.1(b)(7)(A) make clear that this enhancement does not apply to defendants who simply misrepresent that they work for a government agency and capitalize on that misrepresentation to defraud people. Rather, the enhancement targets defendants who convince their victims that the government will benefit financially from the fraudulent transaction, thereby exploiting the victims' trust in government and sense of civic virtue as a central component of the fraud. Accordingly, § 2B1.1(b)(7)(A) may not be applied to Hoppe unless it is shown that he led his victims to believe that the money they paid him would benefit the U.S. Postal Service.

In my view, the government totally failed to make this showing. Hoppe was guilty of a garden-variety fraud, not one that capitalized on his victims' trust in government and sense of civic virtue. Nothing about Hoppe's behavior conveyed the impression that the U.S. Postal Service would benefit financially from his scheme. Hoppe told his victims that he was "Gene Juarez," a postal inspector, and that he

---

**1.** Where the "on behalf of" enhancement applies, the Guidelines require that the district court increase the defendant's offense level by two levels, but "if the resulting offense level is less than level 10, increase to level 10."

U.S.S.G. § 2B1.1(b)(7)(A). Because Hoppe's base offense level was six, the district court was required to impose a four-level enhancement.

had access to government-seized property that he could obtain for them at a cheap price. He asked the victims to pay with cash or personal checks made out to "Eugene Hoppe," whom he identified as his supervisor at the Postal Inspectors office. Nothing in the record suggests that Hoppe ever told his marks that the sale was being made by the government or that the government would receive the proceeds. Hoppe never memorialized the transactions in anything resembling a U.S. government contract, never asked the victims to sign an official-looking document, and did not give them a receipt of any kind, let alone one indicating that the government would receive the funds. When one of the victims asked for a contract, Hoppe had her write one out by hand. This contract identified the seller of the property as Hoppe, not the U.S. Postal Service or any other government agency; Hoppe signed the contract, "Gene Juarez for Eugene Hoppe." Hoppe offered merchandise at such unbelievably low prices-three buildings (including one the size of an entire city block) for $5,000, a Lexus for $1,000-that his victims must have believed that the property was stolen.

The majority cites two factual circumstances that, in its view, lead to an inference that Hoppe communicated that he was selling goods for the benefit of the Postal Service. First, the majority contends that Hoppe's reference to his "supervisor" added an air of legitimacy to the fraud and suggested that the Postal Service authorized and would benefit from the deal-in short, that the government would receive the proceeds. I disagree. In my opinion, Hoppe's use of his "supervisor" in no way implies that the ultimate recipient of the funds would be the United States. Rather, this statement, as well as the totality of the circumstances-including the lack of official paperwork and the instructions to pay in cash or checks made out to the

supervisor as an individual-suggests that the "supervisor" was in on the deal. The facts would lead any reasonable person to conclude that Hoppe and his "supervisor" conspired to defraud the government, not that they engaged in transactions on behalf of the government.

The second factual circumstance, the principle circumstance relied on by the majority to justify the substantial increase in the defendant's sentence, is one that is not in the record, was not presented at the change of plea or sentencing hearings or in the presentence report, is unfairly and improperly relied on by my colleagues, and, as far as we can tell, does not exist. In his appeal brief, Hoppe's appellate counsel wrote that Hoppe "undoubtedly" told the victims that "he had access to property seized by the government and could sell it cheaply to non-government employees." The majority contends that this raw speculation by an undoubtedly overworked public defender raises the inference that Hoppe could sell the property *only* to non-government employees, which in turn leads to the further inference that the transaction was authorized by the postal service. In fact, this chain of erroneous and unwarranted assumptions provides the foundation without which the majority's conclusion that an enhancement is justified collapses. I disagree, vigorously, both with the baseless series of assumptions made by the majority and with increasing a defendant's sentence based on the creation of nonexistent facts on appeal. As the majority well knows, punishment must be based on the record before the district judge at the time of sentencing, not on facts subsequently assumed by a prosecutor, a public defender, or two out of three judges on an appellate panel.

As I have already made clear, the alleged "fact" that Hoppe said he could sell the property only to non-government em-

ployees was not before the district court and therefore is not properly before us. *See United States v. Flores–Payon*, 942 F.2d 556, 558 (9th Cir.1991) (stating that appeals court will not consider fact-specific claims raised for the first time on appeal). Nor is there any reason to believe, notwithstanding appellate counsel's speculation, that Hoppe ever made any such statement. Neither the government nor Hoppe's trial counsel alleged or argued that Hoppe told his victims that he could only sell the seized property to non-government employees. We may not presume that he did simply because his lawyer included a casual, unsupported, and in all likelihood erroneous throw-away line in the "Summary" section of the appeal brief. *See Dartez v. Owens–Illinois*, 910 F.2d 1291, 1293–94 (5th Cir.1990) (holding that statements in appellate and post-trial briefs are not judicial admissions); *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1351 (9th Cir.1987) (holding that appellate court could not consider whether taxes should be subtracted from award of future income because evidence about taxation was not presented at trial). More important, the record is clear as to what Hoppe did tell the victims. At the change of plea hearing, the district attorney alleged that Hoppe "claimed he could get [the goods] dirt cheap because they were seized goods from the postal inspector job." The presentence report similarly recounts that "Hoppe told Wagner and others that he had access to government-seized property that he could sell to them at a fraction of the cost." These are the only statements in the record that describe what Hoppe actually told his victims, and they contain no reference to any limitation on the persons to whom he could sell the property dirt cheap, let alone any hint that he could sell the property only to non-government employees. The speculation in Hoppe's appeal brief is clearly at odds with the actual facts in this case as they were presented to the district judge by the Assistant United States Attorney and the Probation Officer.

Alternatively, even if Hoppe had told his victims that he could only sell the property to non-government employees (and nothing in the record supports the majority's conclusion that he did), that would not in my view suggest that Hoppe's shady scheme had the Postal Inspectors' stamp of approval, or that the Postal Service would receive the proceeds. Equally plausible is the inference that Hoppe and his coconspirator supervisor would not sell their ill-gotten goods to government employees because they wanted to avoid detection. Or, the statement could simply indicate that Hoppe offered his non-government employee victims a privilege-access to cheap, seized goods-already available to government employees. In any event, as stated above, the district court did not consider and could not have considered this evidence because it simply does not exist. Therefore, it is improper for the majority to base its decision on it.

Hoppe told his victims that he was a postal inspector and had access to seized goods that he could sell to them "dirt cheap." For this offense, he pled guilty to impersonating a federal agent, and he was sentenced under the fraud guidelines because he used his false identity to commit the fraud. However, Hoppe never did or said anything to convey the message that his offer to sell seized goods was made on behalf of the government. Accordingly, I would hold that the district judge abused his discretion when he applied the four-level enhancement for acting "on behalf of" a government agency. I would reverse Hoppe's sentence and remand to the trial court for resentencing, and, because

Hoppe is now serving his enhancement, I would do so forthwith.